UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

CAROL BAGLEY,

      Plaintiff,

v.                                                                                                  Case No. 2:05-CV-76

J.C. PENNEY CORPORATION, INC.,                                      HON. GORDON J. QUIST

      Defendant.
_____/

## OPINION

      Plaintiff, Carol Bagley ("Bagley"), filed this diversity action on February 28, 2005, in the Delta County Circuit Court against Defendant, J.C. Penney Corporation, Inc. ("J.C. Penney"), alleging claims of premises liability, vicarious liability for employee's negligence, and negligent supervision. J.C. Penney removed the case to this Court on April 1, 2005, on the basis of diversity jurisdiction. Bagley's claims arise out of injuries that she suffered while she was a customer at the J.C. Penney hair salon in Escanaba, Michigan. Now before the Court is Defendant's motion for summary judgment. For the reasons set forth below, the Court will deny the motion.

### I. Facts

      On August 7, 2003, Bagley, who at that time was sixty-six years old, visited the J.C. Penney hair salon to have her hair styled by Amanda Baker ("Amanda"). This was the first time Bagley had gone to the J.C. Penney salon. Shortly after Bagley arrived, Amanda took Bagley to her stylist's station. (Bagley Dep. at 30-31.) Bagley took her glasses off and set them on the counter, and she

put her purse under the counter on the floor.[1] (Id. at 31-32.) Bagley could not recall whether she noticed any cords on the ground at that point, but she admits that she would have been able to see any cords that were there. (Id. at 35-36.) After Bagley took off her glasses and set her purse down, Bagley followed Amanda to a sink in the wash area. (Id. at 36-37.) Amanda then put a smock on Bagley, which went down past Bagley's knees and to the lower area of her back. (Baker Dep. at 19.)

Amanda washed Bagley's hair and then walked with Bagley back to the stylist's chair, where Amanda began putting perm solution and curlers in Bagley's hair. (Bagley Dep. at 37-41.) As Amanda worked on Bagley's hair, she moved her roll-cart around and behind Bagley. (Id. at 41-42.) Bagley testified that the perm solution and curlers were on the roll-cart and that she believes that Amanda's hair dryers and curling irons were on the roll-cart, but Amanda did not use those items on Bagley. (Id. at 42.) After about twenty minutes, Amanda told Bagley to go back to the sink to have her hair rinsed. Amanda went to the sink before Bagley got out of the chair. (Id. at 47; Baker Dep. at 11.)

As Bagley began to get out of the chair, she saw that there were cords on the floor to the right of her chair that were attached to items on Amanda's roll-cart, which was located behind Bagley. (Id. at 48-49.) She was still wearing the smock and decided to get out of the chair to the left, where she saw no cords, "to be safe." (Id. at 49-51.) Bagley turned the chair to the left and rose by placing her left foot behind the footrest under the chair and her right foot in front of it. (Id. at 48, 51.) However, Bagley did not see a cord that was underneath the chair. (Id. at 51.) As she rose from the

---

[1] Bagley is nearsighted and can see without her glasses. (Bagley Dep. at 19-20.) Therefore, Bagley was still able to see the condition of the hair salon as it existed at the time of the incident.

chair, she tripped on the cord and fell to the ground, injuring her shoulder as a result of the fall. (Id. at 53-55.)

## II. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. Id.

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Agristor Financial Corp. v. Van Sickle, 967 F.2d 233, 236 (6th Cir. 1992) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

## III. Discussion

"When, as here, federal jurisdiction is based upon diversity of citizenship, [the Court] must apply the law of the forum state." Estate of Riddle v. S. Farm Bureau Life Ins. Co., 421 F.3d 400, 404 (6th Cir. 2005) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78, 58 S. Ct. 817, 822 (1938). The Court need not make a choice of law determination because the parties agree that Michigan law applies in this case.

The parties do not dispute that Bagley occupied the status of a business invitee while she was at the J.C. Penney hair salon. The general rule under Michigan law is that a landowner owes a duty to exercise reasonable care to protect an invitee from an unreasonable risk of harm caused by a dangerous condition of the land which the landowner knows or should know the invitee will not

3

discover, realize, or protect herself against. Bertrand v. Alan Ford, Inc., 449 Mich. 606, 609, 537 N.W.2d 185, 186 (1995). If the unsafe condition results from causes other than the active negligence of the owner or his employees, the landowner will be held liable if the condition is known to him "'or is of such a character or has existed a sufficient length of time that he should have knowledge of it.'" Serinto v. Borman Food Stores, 380 Mich. 637, 641, 158 N.W.2d 485, 486 (1968) (quoting Carpenter v. Herpolsheimer's Co., 278 Mich. 697, 698, 271 N.W. 575, 575 (1937)) (emphasis deleted). However, a landowner generally has no duty to remove open and obvious dangers. Lugo v. Ameritech Corp., 464 Mich. 512, 516, 629 N.W.2d 384, 386 (2001).

> [W]here the dangers are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them, an invitor owes no duty to protect or warn the invitee unless he should anticipate the harm despite knowledge of it on behalf of the invitee.

Id. (quoting Riddle v. McLouth Steel Prods. Corp., 440 Mich. 85, 96, 485 N.W.2d 676, 681 (1992)) (internal citation and quotation omitted). The test for an open and obvious danger is whether an average user with ordinary intelligence would have been able to discover the danger and the risk presented upon casual inspection. Joyce v. Rubin, 249 Mich. App. 231, 238-39, 642 N.W.2d 360, 364 (2002). "Because the test is objective, courts look not to whether a particular plaintiff should have known that the condition was hazardous, but to whether a reasonable person in his position would foresee the danger." Kenny v. Kaatz Funeral Home, Inc., 264 Mich. App. 99, 106, 689 N.W.2d 737, 741 (2004) (citing Joyce, 249 Mich. App. at 238-39, 642 N.W.2d at 364).

The open and obvious rule is not absolute. "[I]f special aspects of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk." Lugo, 464 Mich. at 517, 629 N.W.2d at 386. Where an open and obvious risk has special aspects that give rise to "a uniquely high likelihood

4

of harm or severity of harm if the risk is not avoided," the landowner cannot rely upon the open and obvious nature of the condition but must take adequate steps to guard against the risk presented. Id. at 519, 629 N.W.2d at 387-88. In Lugo, the Michigan Supreme Court cited two examples of conditions involving special aspects. The first scenario was a commercial building with only one exit for the general public where the floor is covered with standing water. See id. at 518, 629 N.W.2d at 387. The court observed: "While the condition is open and obvious, a customer wishing to exit the store must leave the store through the water. In other words, the open and obvious condition is effectively unavoidable." Id. The second scenario was an unguarded thirty-foot deep pit in the middle of a parking lot. The court noted that while the condition would certainly be obvious and avoidable, "this situation would present such a substantial risk of death or severe injury to one who fell in the pit that it would be unreasonably dangerous to maintain the condition, at least absent reasonable warnings or other remedial measures being taken." Id.

In its motion for summary judgment, J.C. Penney contends that it is entitled to judgment as a matter of law because the condition, i.e., the electric cords on the ground, was open and obvious because Bagley admitted that she could see the cords to the right of her chair before attempting to get up. J.C. Penney further argues that the cord on which Bagley tripped cannot reasonably be considered to involve a special aspect because there is no evidence that the cord created a high risk of severe harm. In particular, J.C. Penney notes that Bagley did not have any difficulty walking through the salon with the smock on from the sink to the stylist's chair, and it contends that the cord cannot be compared to the thirty-foot deep hole mentioned in Lugo.

In support of its argument that the condition in this case was open and obvious, J.C. Penney cites Rhodes v. Detroit Medical Center, No. 262787, 2006 WL 355249 (Mich. Ct. App. Feb. 16, 2006) (per curiam), and Wellman v. Wal-Mart Stores, Inc., 192 F. Supp. 2d 767 (W.D. Mich. 2002).

In Rhodes, the plaintiff tripped over a black cord in a hospital room. The cord ran from the foot of the bed, onto the floor along side the bed, and up to the head of the bed. The court held that the condition was not unavoidable because a reasonable person would have seen the cord upon casual inspection. 2006 WL 355249, at *1. The court noted that the black cord contrasted with the gray tile floor, the overhead lights provided adequate illumination, and the cord was in a place where it could be easily seen. The court also stated that it was irrelevant that the plaintiff did not see the cord until after her fall because "[t]he relevant question is whether a reasonable person, upon casual inspection, would have seen the cord." Id. Finally, the court found that there was no genuine issue of material fact regarding the existence of a special aspect because there was ample room to avoid the cord and the existence of the cord did not pose a uniquely high likelihood of harm or severity of harm. In Wellman, the plaintiff was injured in a Wal-Mart store while shopping with his wife when he tripped on a steel chain left dangling in an aisle. The plaintiff testified that he and his wife were looking at a display when he tripped on the chain. The court held that, "although the contrast of the steel chain against the plain off-white floor is not stark, the chain [was] plainly visible," and, therefore, under an objective standard, was an open and obvious condition. 192 F. Supp. 2d at 770-71. The court also held that the presence of the chain did not give rise to a situation that could be expected to cause a severe injury, comparing it to the common or ordinary parking lot pothole rather than the thirty-foot deep pit discussed in Lugo. See id. at 772.

On the other hand, Bagley contends that this case is different from Rhodes and Wellman because the cord on which Bagley tripped was not out in the open like the cord in Rhodes or the chain in Wellman. Bagley points out that while she saw the cords to her right, she was unable to see the cord underneath the chair, even though she looked down and saw the cords to her right. Bagley contends that the facts in this case are closer to those in Trapani v. M.J.R. Group, L.L.C., No.

6

255696, 2006 WL 120671 (Mich. Ct. App. Jan. 17, 2006) (per curiam), where the court held that there was a material question of fact regarding whether a patron using ordinary care would have detected and avoided the condition. The plaintiff in Trapani was injured when she tripped on a piece of carpet on the stairway in a theater. The court observed that "[a]s opposed to parking lot potholes, and ordinary cement steps, folded and torn carpeting on a dimly-lit theater stairway is not normally anticipated or easily detected and avoided with the exercise of ordinary observation and reasonable care." Id. at *1.

    The Court agrees with Bagley that a genuine issue of material fact remains with regard to whether an ordinary person in Bagley's position would have detected and avoided the cord underneath the stylist's chair. Bagley saw the cords to her right and purposefully got out of the chair to her left in order to avoid the dangerous situation posed by the cords. Contrary to J.C. Penney's suggestion, the fact that Bagley saw the cords to her right does not mean that she should have seen the cord running under the chair. In fact, there is no evidence suggesting that an ordinary patron in Bagley's position, i.e., wearing a smock and getting out of the chair, would or could have detected and avoided the cord upon casual observation and using reasonable care. Moreover, Bagley testified that she got up from the chair on the side where there were no cords in order to be safe. Therefore, whether the condition was open or obvious is a question for the trier of fact. In light of this conclusion, the Court finds it unnecessary to address the issue of whether a special aspect made the condition unreasonably dangerous.[2]

---

[2] The Court notes that J.C. Penney does not request summary judgment on the ground that it did not have notice of the condition. This may be because there is evidence suggesting that Amanda created the condition by moving her roll-cart around the chair and by failing to put the cart back under the counter when she had finished using it.

7

## IV. **Conclusion**

For the foregoing reasons, the Court will deny J.C. Penney's motion for summary judgment.

An Order consistent with this Opinion will be entered.


Dated: July 28, 2006             /s/ Gordon J. Quist
                          GORDON J. QUIST
                          UNITED STATES DISTRICT JUDGE